**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**CARMELLE JAMISON**                                                    **PLAINTIFF**

**V.**                                                    **NO. 4:21-CV-171-DMB-JMV**

**HARBOR FREIGHT TOOLS INC.**                                          **DEFENDANT**

## OPINION AND ORDER

Following the termination of her employment, Carmelle Jamison filed a pro se complaint against her former employer, Harbor Freight Tools Inc., alleging various types of discrimination. Harbor Freight has moved to dismiss or stay the case in favor of arbitration. Because the Court finds there is a valid agreement to arbitrate that requires an arbitrator to determine arbitrability, this case will be stayed pending arbitration.

**I
Procedural History**

On December 22, 2021, Carmelle Jamison filed a pro se complaint in the United States District Court for the Northern District of Mississippi against her former employer, Harbor Freight Tools Inc., alleging violations of Title VII, the Americans with Disabilities Act, and the Family Medical Leave Act, as well as various state law claims arising from her employment. Doc. #1. Three weeks later, Jamison filed an amended complaint against Harbor Freight "to add evidence exhibits and to correct errors found throughout the complaint." Doc. #6 at PageID 56. In the amended complaint, Jamison alleges she "was an employee of [Harbor Freight] from June 4th, 2018 – May 20th, 2020;" she suffers from "a disability of congestive heart failure;" and she was terminated "for several different discriminatory, false, and pretextual reasons." *Id.* at 1–2.

On February 8, 2022, Harbor Freight Tools USA, Inc., asserting it was "incorrectly identified as Harbor Freight Tools, Inc.,"[1] filed a "Motion to Dismiss Complaint and Compel Arbitration or, in the Alternative, to Stay."[2] Doc. #9. The motion is fully briefed. Docs. #10, #16, #19.

## II
## Federal Arbitration Act

The Federal Arbitration Act ("FAA") "provides that written arbitration agreements are generally valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 579 (5th Cir. 2020) (internal quotation marks omitted). Under the FAA, if the making of an arbitration agreement is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. This requirement may be satisfied by a jury trial if demanded by the parties or through an evidentiary hearing. *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406, 411–12 (N.D. Miss. 2016). But if the parties do not request a hearing, a court need not hold one when there is no genuine dispute of material fact related to the making of an arbitration agreement. *See id.* at 417 ("[A] Court must hold a hearing unless there is no genuine issue of material fact …").

"A court makes two determinations when deciding a motion to enforce an arbitration agreement. First, the court asks whether there is a valid agreement to arbitrate and, second, whether

---

[1] Harbor Freight has taken no action nor presented any proof seeking to correct the asserted misnomer.

[2] Harbor Freight filed the motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) or, alternatively, Rule 12(b)(6). Because it seeks dismissal in favor of arbitration, the Court, pursuant to Fifth Circuit precedent, addresses the motion as a challenge to improper venue under Rule 12(b)(3). *See McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019) ("Our court has not decided whether Rule 12(b)(1) or 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration provision. We have, however, accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor of arbitration.") (internal citation omitted). And although the motion references Rule 12(b)(1), which concerns dismissal for lack of subject matter jurisdiction, Harbor Freight does not present any argument regarding jurisdiction and there can be no dispute that this Court has subject matter jurisdiction since some of Jamison's claims arise under federal law. *See* 28 U.S.C. § 1331.

the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (internal citation omitted). However, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). "Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

When the party seeking arbitration argues that there is a delegation clause, "the court performs the first step—an analysis of contract formation—but the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." *Edwards*, 888 F.3d at 743–44 (cleaned up). "In determining whether a challenge is to formation itself or to subsequent enforcement, courts should apply state-law principles of contract." *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020) (cleaned up).

### III
### Analysis

In seeking dismissal of Jamison's claims in favor of arbitration, Harbor Freight argues that "as a condition of her employment, [Jamison] entered into a valid and binding arbitration agreement with Harbor Freight, agreeing to arbitrate any employment claims arising out of her employment." Doc. #10 at 1. In its initial memorandum, Harbor Freight relies on a Dispute Resolution Policy ("DRP")[3] within a July 5, 2016, Employee Handbook ("2016 Handbook") and

---

[3] In relevant part, the DRP within the 2016 Handbook provides:

> This Dispute Resolution Policy ("DRP") provides for mandatory arbitration of employment disputes in accordance with the employment arbitration rules of the American Arbitration Association ("AAA Rules").

a separate DRP Acknowledgment that was allegedly signed electronically by Jamison on June 4, 2018. *Id.* at 2–3; Doc. #9-1 at PageID 71–75.

Jamison challenges Harbor Freight's evidence, arguing that there is no "chain of custody" for the digital documents she allegedly signed; Matthew Finney's declaration specifying the procedures for new employees to electronically sign documents does not detail what actually happened in her case; and the DRP has been tampered with. Doc. #16 at 6–9. As other proffered reasons the DRP should not apply to her claims, Jamison argues that the DRP cannot be a binding agreement because it is contained within the 2016 Handbook, which explicitly states it is not a contract; her acceptance of new positions with Harbor Freight superseded any previous agreement she entered with Harbor Freight; enforcing the DRP would "interfere with and restrict [her] right to litigate her claims;" she is not mentally competent to enter into the DRP; the DRP is "unconscionable, illusory, and ambiguous;" and Harbor Freight waived its right to arbitration by terminating her "before seeking arbitration." *See id.* at 2–6, 11–31.

Harbor Freight replies that Jamison has not provided sufficient proof that she did not sign the DRP and, even if she did not, her signature is not required because she continued working for

---

The DRP covers any disputes relating to or arising out of your employment relationship with Harbor Freight Tools or termination of that relationship, ….

…

… This mutual agreement to arbitrate Claim(s) means that both Harbor Freight Tools and you are bound to use arbitration as the exclusive means of resolving such Claim(s), foregoing any entitlement to a jury trial. …

…

The DRP is a condition of both initial and continued employment and you agree to the DRP by accepting and continuing your employment. … The mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both you and Harbor Freight Tools, although specific DRP procedures may be modified from time to time as required by applicable law.

Doc. #9-1 at PageID 72–74.

Harbor Freight. Doc. #19 at 3–6. Harbor Freight also argues that Jamison "provided no evidence of mental incompetency." *Id.* at 8. Asserting that there is a delegation clause, Harbor Freight argues issues of validity or enforceability should be arbitrated as agreed by the parties. *Id.* at 10.

Harbor Freight submitted additional evidence in support of its reply, including a January 1, 2020, Associate Handbook ("2020 Handbook"). Doc. #19-1 at PageID 220–223. The 2020 Handbook contains an updated DRP that provides in relevant part:

> Harbor Freight Tools USA, Inc. … has adopted and implemented this Dispute Resolution Policy ("DRP"), requiring mandatory, binding arbitration of employment-related disputes, for all Associates, regardless of length of service.
>
> The DRP covers any and all claims and disputes relating to or arising out of your employment relationship with Harbor Freight Tools or the termination of that relationship, … including, but not limited to, any claims arising out of and/or relating to this DRP. … The claims covered by the DRP … include any and all claims or disputes for which a state or federal court otherwise would be authorized to grant relief, including, but not limited to, … claims by Associates for … employment discrimination, harassment or retaliation, claims under the Americans with Disabilities Act, … Title VII of the Civil Rights Act of 1964 and its amendments, and any other state or local anti-discrimination laws ….
>
> …
>
> This mutual agreement to arbitrate Claim(s) means that both Harbor Freight Tools and you are bound to use arbitration as the exclusive means of resolving such Claim(s), foregoing any entitlement to a jury trial. …
>
> …
>
> The DRP is a condition of both initial and continued employment and you agree to the DRP by accepting and continuing your employment. … The mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both you and Harbor Freight Tools, although specific DRP procedures may be modified from time to time as required by applicable law.

*Id.* at PageID 222–23. Harbor Freight also submitted a Handbook Acknowledgment signed and dated by Jamison on January 23, 2020. *Id.* at PageID 224. The Acknowledgment provides in relevant part:

I hereby acknowledge that I have received a copy of the Harbor Freight Tools Associate Handbook and understand that it is a summary of important information on the company's general personnel policies and on my privileges and obligations as an Associate. I acknowledge and understand that my employment is subject to the policies set forth in the Associate Handbook and that I am expected to read, understand, and adhere to those policies and any other information in the Associate Handbook. If I have any questions about any policy or other information in the Associate Handbook, I know that I can discuss those questions with my Supervisor/Manager or a representative from the Human Resources Department.

I acknowledge that this edition of the Harbor Freight Tools Associate Handbook, dated 1/1/2020, supersedes and replaces all previous Associate Handbooks.

Other than the mutual agreement to arbitrate set forth in the Dispute Resolution Policy, I acknowledge and understand that nothing in the Associate Handbook is intended to create a contract of employment between myself, as an Associate, and Harbor Freight Tools. I also understand that Harbor Freight Tools may change, rescind or add to any of the policies, benefits or practices described in the Associate Handbook, except the mutual agreement to arbitrate, in its sole and absolute discretion, with or without prior notice.

*Id.*

Because Harbor Freight argues there is a delegation clause, the Court must determine (1) whether there is a valid agreement to arbitrate, and (2) if there is a valid agreement to arbitrate, whether there is in fact a delegation clause. *Edwards*, 888 F.3d at 743–44.

## A. Validity of DRP

When determining whether an agreement to arbitrate exists, "federal courts do not consider general challenges to the validity of the entire contract." *Edwards*, 888 F.3d at 744 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006)); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 215 (5th Cir. 2003) ("Unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute.") (alteration omitted).

Under Mississippi law, "[t]he elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 734 (Miss. 2019). "[T]he usual defenses to a contract such as fraud, unconscionability, duress, and lack of consideration may be applied to invalidate an arbitration agreement, so long as the law under which the provision is invalidated is not applicable only to arbitration provisions." *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002). "Unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Id.* at 715 (internal quotation marks omitted). "The unconscionability of [a] contract … is to be determined under the circumstances as they existed at the time the contract was made." *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000).

### 1. Electronic signature

Although Jamison argues she never electronically signed the DRP Acknowledgment,[4] she does not challenge her signature on the subsequent Handbook Acknowledgment, which makes clear that the 2020 Handbook "supersedes and replaces all previous Associate Handbooks" and includes an agreement to be bound by the 2020 Handbook's policies. Doc. #19-1 at PageID 224; *see Gezu v. Charter Commc'ns*, 17 F.4th 547, 555 & n.9 (district court did not error in granting motion to compel arbitration based in part on evidence submitted for the first time with reply brief where plaintiff did not challenge the evidence). "In Mississippi, a person is charged with knowing

---

[4] While no party requested a hearing, the Court must determine whether there is a genuine issue of material fact which would require a hearing even in the absence of such a request. *See Dalon*, 161 F. Supp. 3d at 417. A hearing is not required for the reasons explained in this order.

the contents of any document that he executes." *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002). Because there is no dispute Jamison signed the Handbook Acknowledgment, the Court need not resolve the factual dispute regarding whether Jamison electronically signed the DRP Acknowledgment.

## 2. Capacity to contract

Jamison also argues she did not have the mental capacity to contract. In her declaration, Jamison states she is "not mentally competent enough or educated enough to understand what is written in the [DRP] without someone [she] trust[s] explaining it" and "[p]ursuant to and in acknowledgment of [her] lack of and [her] very limited understanding and [her] difficulty in understanding legal matters, procedures, language and words in general," she "informed the court that Mr. Terrell Gibson was [her] Power of Attorney and asked that he be allowed to speak for [her] … before the court in all matters."[5] Doc. #16-1 at 3. Gibson's declaration states that Jamison "can read ok but she is unable to comprehend and understand what she reads when it comes to contracts and technical writings; especially legal or legalistic type matters and writings" because of her "severely limited and diminished education due to a segregated school system." Doc. #16-2 at 1–2. Harbor Freight responds that Jamison has not satisfied her burden of showing that she is incompetent under Mississippi law. Doc. #19 at 7–9.

"The law presumes a person sane and mentally capable to enter into a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental capacity to establish it by a preponderance of proof." *Frierson v. Delta Outdoor, Inc.*, 794 So. 2d 220, 224 (Miss. 2001) (internal citation omitted).

---

[5] Jamison also states that "[a]ll of the documents/arguments that have been submitted in this case before the court were drafted by Mr. Gibson." Doc. #16-1 at 3. Gibson, however, is not an attorney. Doc. #16-2 at 1.

Jamison has failed to meet her burden because her signature on the Handbook Acknowledgment again defeats her argument. The rule that a "person is charged with knowing the contents of any document that he executes" also forecloses arguments that she did not understand what she signed. *See Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264–265 (5th Cir. 2004) (collecting cases) ("[U]nder Mississippi law, the inability to read *and understand* the arbitration agreement does not render the agreement unconscionable or otherwise unenforceable.") (emphasis added).

### 3. Handbook language

Although difficult to decipher, Jamison appears to argue that the DRP is not a contract, her acceptance of new positions after the DRP Acknowledgment "voided" any agreement, the DRP is illusory because it is not mutually binding on the parties, and at-will employment is insufficient consideration for the DRP because she could be "terminated at any time." Doc. #16 at 2, 13, 24–29. All these arguments fail under the language of the 2020 Handbook and Handbook Acknowledgment.

First, while Jamison points to disclaimer language within the 2016 Handbook providing that "this handbook is not a contract,"[6] per the Handbook Acknowledgment, the 2020 Handbook supersedes the 2016 Handbook and both the 2020 Handbook and the Handbook Acknowledgement provide that nothing within the 2020 Handbook is intended to create a contract "[o]ther than the mutual agreement to arbitrate set forth in the [DRP]." Doc. #19-1 at PageID 224. Similarly, with respect to Jamison's argument that her acceptance of different positions "voided" the DRP Acknowledgment, she does not identify any position she accepted after signing the Handbook

---

[6] Doc. #16-10 at PageID 146.

Acknowledgment, which leaves the 2020 Handbook the governing agreement between the parties.[7]

Further, under Mississippi law, "mutuality of obligation is not required for an arbitration agreement to be enforceable so long as there is consideration." *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 453 (Miss. 2004); *see Caldwell v. Hydrovac Indus. Servs., Inc.*, No. 1:12-cv-272, 2014 WL 1285949, at *3 (N.D. Miss. Mar. 31, 2014) (rejecting argument that employer's ability to unilaterally change arbitration agreement rendered agreement unenforceable). And contrary to Jamison's at-will employment argument, the Mississippi Supreme Court "has held that continued employment alone can be sufficient consideration to uphold a contract." *Raines v. Bottrell Ins. Agency, Inc.*, 992 So. 2d 642, 646 (Miss. Ct. App. 2008) (citing *Frierson v. Sheppard Bldg. Supply Co.*, 154 So. 2d 151, 154 (Miss 1963)). In any event, the language of the DRP within the 2020 Handbook specifically provides that it is a "mutual agreement" binding "both" Harbor Freight and Jamison that "may not be modified or rescinded except by a written statement signed by both" parties.[8] Doc. #19-1 at PageID 223.

### 4. Summary

Jamison has failed to show that the updated DRP is invalid. Thus, the Court concludes there is a valid agreement to arbitrate between her and Harbor Freight.

### B. Delegation Clause

Having found there is a valid agreement to arbitrate, the Court next must decide "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have

---

[7] Jamison points to provisions within the 2016 Handbook to argue that the DRP is "unconscionable, illusory, and ambiguous and cannot be enforced as a matter of law." Doc. #16 at 23–24. But because such provisions are not contained in the DRP, the Court need not consider them. *See Will-Drill*, 352 F.3d at 215 ("Unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute.").

[8] In this respect, Jamison's illusory argument is factually incorrect.

10

the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202 (citing *Rent-A-Ctr.*, 561 U.S. at 68–69). Harbor Freight points to language in the updated DRP providing that the parties agree to "resolve all Claim(s) solely by final and binding arbitration" "in accordance with the [American Arbitration Association ("AAA")] employment arbitration rules."[9] Based on this language and citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012), Harbor Freight argues "[a]n arbitration agreement that incorporates the AAA Rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Doc. #19 at 11.

Because "AAA rules expressly give arbitrators the power to resolve" "the initial question of arbitrability, i.e. whether the claim is within the parties' agreement to arbitrate,"[10] the Court agrees that incorporation of the AAA rules in the updated DRP serves as a valid delegation clause. All questions of arbitrability then must be reserved for the arbitrator.

### C. Waiver

Jamison also argues that Harbor Freight has waived its right to arbitration because "not once in almost three years did [it] seek or attempt to arbitrate these claims until after [she] filed suit." Doc. #16 at 21. "Waiver of arbitration is a disfavored finding." *Int'l Energy Ventures Mgmt.*, 999 F.3d at 266 (alterations omitted). It should only be found "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* "Substantial invocation occurs when a party performs an overt act *in court* that evinces a desire to resolve the arbitrable dispute though litigation rather than arbitration." *Id.* (cleaned up) (emphasis added).

---

[9] Doc. #19-1 at PageID 222.

[10] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 264 (5th Cir. 2021).

Harbor Freight was served with Jamison's complaint on January 28, 2022,[11] and filed its motion to dismiss or stay in favor of arbitration.  It has taken no other action in the case that indicates a desire to resolve the dispute through litigation rather than arbitration.  Accordingly, it has not waived its right to arbitration.

### D.  Dismissal or Stay

The Court concluded above that because the parties entered a valid agreement to arbitrate and Harbor Freight has not waived its right to arbitration, an arbitrator must decide the arbitrability of Jamison's claims.  Citing *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991), Harbor Freight argues that dismissal with prejudice is appropriate because "all of the issues raised … must be submitted to arbitration," asking for a stay only as alternative relief.[12]  Doc. #10 at 13.

Since *Alford*, however, the Fifth Circuit "has noted … that dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice."  *Grasso Enters., LLC v. CVS Health Corp.*, 143 F. Supp. 3d 530, 542 (W.D. Tex. 2015) (collecting cases).  While the Court has not analyzed Jamison's claims to determine whether they fall under the arbitration agreement because the delegation clause reserves those questions for the arbitrator to decide, there is still a possibility some claims may not fall within the agreement to arbitrate.  Accordingly, the Court will exercise its discretion and stay the case pending arbitration rather than granting dismissal.

---

[11] Doc. #8.

[12] In her response, Jamison argues against arbitration but does not address whether dismissal or a stay is more appropriate should the Court determine the parties have a valid arbitration agreement.

**IV**
**Conclusion**

Harbor Freight's "Motion to Dismiss Complaint and Compel Arbitration or, in the Alternative, to Stay" [9] is **GRANTED**. This case is **REFERRED** to arbitration for a determination of whether Jamison's claims are arbitrable and if so, a determination on the merits. This action is **STAYED** in its entirety pending arbitration.

**SO ORDERED**, this 8th day of June, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**