IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CARMELLE JAMISON**                                                                                         **PLAINTIFF**

**V.**                                                                                              **NO. 4:21-CV-171-DMB-JMV**

**HARBOR FREIGHT TOOLS INC.**                                                                 **DEFENDANT**

**OPINION AND ORDER**

Following the arbitration of Carmelle Jamison's pro se claims against Harbor Freight Tools, Inc., Harbor Freight moves to confirm the arbitration award and Jamison moves to vacate the arbitration award. Because Jamison presents no valid reason to vacate the arbitration award and because Harbor Freight satisfies the requirements for confirmation of the arbitration award, the arbitration award will be confirmed and Jamison's motion to vacate will be denied.

**I**
**Background and Procedural History**

On December 22, 2021, Carmelle Jamison filed a pro se complaint in the United States District Court for the Northern District of Mississippi against her former employer Harbor Freight Tools, Inc., alleging violations of Title VII, the Americans with Disabilities Act, and the Family Medical Leave Act, as well as various state law claims. Doc. #1. Three weeks later, Jamison filed a pro se amended complaint against Harbor Freight "to add evidence exhibits and to correct errors found throughout the complaint." Doc. #6 at PageID 56. In the amended complaint, Jamison alleges she "was an employee of [Harbor Freight] from June 4th, 2018 – May 20th, 2020;" she suffers from "a disability of congestive heart failure;" and she was terminated "for several different discriminatory, false, and pretextual reasons." *Id.* at PageID 29–30 (emphasis omitted).

On February 8, 2022, Harbor Freight Tools USA, Inc., asserting it was "incorrectly

identified as Harbor Freight Tools, Inc.,"[1] filed a "Motion to Dismiss Complaint and Compel Arbitration or, in the Alternative, to Stay." Doc. #9. Granting the motion, the Court referred the case "to arbitration for a determination of whether Jamison's claims are arbitrable and if so, a determination on the merits," and stayed the case "in its entirety pending arbitration."[2] Doc. #20 at 13.

On November 7, 2023, the arbitrator issued a "Final Award" "in full settlement of all claims submitted to this arbitration," concluding that Jamison was not entitled to damages from Harbor Freight. Doc. #46-4 at PageID 492. The arbitrator elaborated:

> Since Ms. Jamison's claims are denied, she is not the prevailing party and, therefore, not entitled to recover damages. Although Respondent has prevailed, its request for an award of attorney fees and expenses is denied. Claimant's chosen representative occasioned unnecessary delay and expense due to his continuous and often inappropriate motions; however, he was not an attorney and there was no indication that he had a malicious motive.
>
> … Claimant has not proven a violation of the ADA and Respondent has failed to establish that it is entitled to an award of attorney fees and costs.
>
> The administrative fees of the American Arbitration Association, totaling $2,950.00 and the compensation of the Arbitrator totaling $78,600.00, shall be borne as incurred.

*Id*.

Three weeks later, on November 28, 2023, Harbor Freight filed "Defendant's Motion to Lift Stay and Confirm Arbitration Award" ("Motion to Confirm") requesting the Court "lift the stay of this action for the purpose of the Court's confirmation of the Final Award, enter final judgment confirming the full and final resolution of [Jamison's] claims and dismiss [Jamison's]

---

[1] Harbor Freight has not taken any action to formally correct the asserted misnomer.

[2] Between March 16, 2023, and June 1, 2023, Jamison "filed numerous motions … primarily seeking to evade the Court's arbitration ruling." Doc. #42 at 1. The Court denied all such motions, warning Jamison "that her continued filing of motions requesting relief by this Court may subject her to sanctions." *Id*.

claims with prejudice." Doc. #46 at 2. Jamison responded in opposition to the Motion to Confirm on January 9, 2024. Doc. #56. The same day, Jamison filed a motion to vacate the arbitration award ("Motion to Vacate"). Doc. #57.

Harbor Freight replied in support of its Motion to Confirm on January 25, 2024. Doc. #63. Six days later, Jamison filed "Plaintiff's Motion Requesting Leave to File a Sur-Reply Based on New Evidence Submitted by Defendant in Its [Motion to Confirm] Reply" ("Surreply Motion"). Doc. #64. On February 2, 2024, Harbor Freight responded in opposition to the Motion to Vacate and five days after that, responded in opposition to the Surreply Motion. Docs. #66, #68. On February 12, 2024, Jamison replied in support of her Motion to Vacate. Doc. #70. Jamison did not reply in support of her Surreply Motion.

## II
## Motion to Vacate[3]

Jamison argues the Court should vacate the arbitration award for numerous reasons, which Harbor Freight unsurprisingly opposes.

### A. Standard

9 U.S.C. § 10(a) of the Federal Arbitration Act provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone

---

[3] A court must confirm an arbitration award on a timely motion *unless* it is "vacated, modified, or corrected." 9 U.S.C. § 9. So the Court first will address Jamison's Motion to Vacate though Harbor Freight's Motion to Confirm was filed before it.

3

> the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

These statutory grounds are "the exclusive means for setting aside or changing an arbitration award." *Citigroup Glob. Mkts. Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009). "A court may vacate an arbitration award only for the reasons set out in 9 U.S.C. § 10(a)." *Walker v. Ameriprise Fin. Servs.*, 787 F. App'x 211, 213 (5th Cir. 2019).

Judicial review of an arbitration award is "exceedingly deferential." *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 674 (5th Cir. 2012). To obtain vacatur, the party seeking such relief "must clear a high hurdle." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Id.* "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Id.* (cleaned up).

### B. Discussion

#### 1. Validity and enforceability of arbitration agreement

Many of Jamison's arguments[4] urging the Court to vacate the arbitration award stem from her assertion that no valid and enforceable arbitration agreement exists.[5] *See generally* Doc. #58.

---

[4] To the extent Jamison argues common law grounds support vacating the arbitration award, the arguments will not be considered since 9 U.S.C. § 10(a) is the exclusive means for seeking such relief. *Citigroup*, 562 F.3d at 349.

[5] Specifically, Jamison argues that "Neither AAA Nor The Arbitrator Had Proper Lower Court Jurisdiction As No Valid Contract Exists;" "There Is No Law Favoring Arbitration – Contract Can Be Voided/Terminated;" the "2020 Alleged Arbitration Contract Is Illusory & Unconscionable On Its Face;" "Employee Handbooks Are Not Contracts in Mississippi;" "No Valid Arbitration Agreement Existed/Exists Between The Parties;" she "Did Not Knowingly & Voluntarily Waive Her Seventh Amendment Right To A Jury Trial" by signing the arbitration agreement; "Threshold

4

In response to these arguments, Harbor Freight submits that "[b]ecause the Court has already concluded that the arbitration agreement is valid and enforceable, it should summarily dismiss [Jamison's] arguments." Doc. #67 at 5. Jamison does not specifically reply to Harbor Freight's assertion, arguing generally that the award "is not a valid and enforceable contract." *See generally* Doc. #71 at 2–3.

The Court's June 8, 2022, order compelling arbitration determined there "is a valid agreement to arbitrate" between Jamison and Harbor Freight "that require[ed] an arbitrator to determine arbitrability." Doc. #20 at 1. To the extent Jamison argues the arbitration agreement is unenforceable, she is "essentially asking the court to reconsider its order compelling arbitration." *Tassin v. Ryan's Family Steakhouse, Inc.*, 509 F. Supp. 2d 585, 591 (M.D. La. 2007). Because the Court has "already considered this issue and concluded the Arbitration Agreement is valid" and because Jamison does not present any new argument or evidence sufficient to alter that conclusion, her arguments that the arbitration award should be vacated because the arbitration agreement is invalid are meritless. *Alim v. KBR, Inc.*, No. 3:11-cv-1746, 2013 WL 12084291, at *1 (N.D. Tex. Sept. 11, 2013), *aff'd*, 570 F. App'x 417 (5th Cir. 2014).

**2. Copy of arbitration agreement**

Though not entirely clear, it seems Jamison argues the Court should vacate the arbitration award because Harbor Freight cannot and has not produced an enforceable arbitration agreement. Doc. #58 at PageID 598–99. Harbor Freight responds that it "produced a copy of the arbitration agreement, which the Court has deemed valid and enforceable." Doc. #67 at 6. In reply, Jamison only seems to reiterate that she believes the arbitration agreement is invalid and unenforceable.

---

Matter, [Harbor Freight's] Arbitration Agreement Is Illusory & Unconscionable & Cannot Be Upheld As A Matter of Law;" "No Contract & No Controversy Equals No Jurisdiction & Mootness;" and the "Award Must Be Vacated As Award Is Based Upon Fraudulent And Forged Documents." Doc. #58 at PageID 599, 600, 602, 603, 605.

*See generally* Doc. #71 at 2–3.

When Harbor Freight filed its motion to compel arbitration on February 8, 2022, it attached as exhibits both its "Dispute Resolution Policy" ("DRP") contained within its July 5, 2016, "Employee Handbook," and a separate DRP acknowledgment signed by Jamison on June 4, 2018. Doc. #9-1 at PageID 71–75. Harbor Freight also attached as an exhibit to its reply in support of its February 8 motion the January 1, 2020, "Associate Handbook" containing an updated DRP, and a "Handbook Acknowledgment" signed and dated by Jamison on January 23, 2020. Doc. #19-1 at PageID 220–24. Because the Court determined such documents constitute a valid arbitration agreement between Harbor Freight and Jamison, Doc. #20 at 10, the Court rejects Jamison's argument that Harbor Freight has not produced a valid and enforceable arbitration agreement.

### 3. Claims against arbitrator

Regarding actions taken by the arbitrator throughout the arbitration proceedings, Jamison argues the Court should vacate the award because the arbitrator (1) illegally confiscated her medical records in violation of 9 U.S.C. § 10(a); (2) did not allow her to present evidence at the final arbitration hearing on her claims; (3) illegally removed her retaliation claim from arbitration in violation of 9 U.S.C. § 10(a); (4) "Denied and Deprived" her of the right to an in-person hearing; and (5) was not impartial in violation of 9 U.S.C. § 10(a) because she is a Harbor Freight employee. Doc. #58 at PageID 604, 605, 606, 607.

Harbor Freight responds that (1) the arbitrator did not illegally confiscate Jamison's medical records and actually "**precluded** [it] from accessing [Jamison's] medical records;" (2) the arbitrator did not violate 9 U.S.C. § 10(a) "by not allowing [Jamison] to present evidence at the final [arbitration] hearing" because Jamison did not previously identify such evidence in accordance with the scheduling order; (3) the arbitrator "did consider [Jamison's remaining]

6

retaliation claim under the ADA related to her accommodation request;" (4) the final hearing was conducted by video conference only due to the logistical difficulties of holding the hearing in Greenville, Mississippi, and Jamison "never proposed a location for an in-person hearing in Greenville;" and (5) the arbitrator was not an "associate/agent of Harbor Freight" and was impartial. Doc. #67 at 14, 9–10, 8, 13, 15.

Jamison replies that she did not receive a copy of the final scheduling order until September 29, 2023, and after receiving it, she "did in fact provide a witness list" as directed by the scheduling order so she should have been able to present such evidence at her final hearing; Harbor Freight was "In Total & Complete Control Of The Arbitrator & The Hearing;" and Harbor Freight "forced the arbitrator to … grant [it] permission to obtain [her] medical records." Doc. #71 at 5–6.

### a. Medical Records

The only document Jamison cites in support of her argument that the arbitrator allowed Harbor Freight to seize and confiscate her medical records without due process of law is her "Second Motion for Emergency Injunctive Relief" filed May 10, 2023 (which the Court denied on June 5, 2023), in which she made the same argument. Doc. #58 at PageID 604 (citing Doc. #33); *see* Doc. #42. In contrast, Harbor Freight attached as an exhibit to its response the arbitrator's ruling regarding the production of Jamison's medical records. Doc. #66-7. The ruling did not allow Harbor Freight to seize or confiscate Jamison's medical records; rather, the arbitrator found a lack of authority to compel Jamison to sign a release granting Harbor Freight access to her medical records. Doc. #66-7 at PageID 865. While the arbitrator would "not allow any medical information to be introduced in evidence unless the underlying medical records [were] disclosed to [Harbor Freight]," this does not equate to Harbor Freight being allowed to seize and confiscate Jamison's medical records. *Id.* Given the exceedingly deferential standard under which the Court

7

must review the arbitrator's ruling[6] and that Harbor Freight's evidence contradicts Jamison's unsubstantiated claim that the arbitrator allowed Harbor Freight to seize and confiscate her medical records, no violation of 9 U.S.C. § 10(a) occurred.

### b. *Presentation of Evidence*

Alleging that the arbitrator violated 9 U.S.C. § 10(a) but failing to cite the specific subsection allegedly violated, Jamison claims the arbitrator did not allow her to present witnesses or evidence, impeach witnesses, or submit a Rule 52(c)[7] motion at the final arbitration hearing. Doc. #58 at PageID 604–05. As support, Jamison cites the Final Award and what she characterizes as "P. Ex 5" (the final hearing transcript) and "Ex.20" (her Rule 52(c) motion). Doc. #46-4 at PageID 484–85 n.4; Doc. #58 at PageID 604. Jamison quotes the final hearing transcript where the arbitrator said to Jamison's representative, "I'm sorry, …, but you will not be allowed to introduce any evidence." Doc. #58 at PageID 604, 615.

Harbor Freight attached as an exhibit to its response the arbitrator's "Order Concerning Conduct of the Evidentiary Hearing and Admission of Claimant's Deposition" in which the arbitrator outlined why Jamison was not allowed to present certain pieces of evidence at the final arbitration hearing:

> On July 20, 2023, [Jamison's representative] notified the Case Administrator that "Jamison will not be attending" the hearing. Notices of the September 22 pre-hearing conference which was conducted as a "dial in" conference call were sent to both parties; however, only [Harbor Freight] participated. As reflected in Scheduling Order #5, final witness and exhibit lists were due on September 28, 2023[.]

---

[6] *Petrofac, Inc.*, 687 F.3d at 674.

[7] The Final Award notes that "[b]ecause of the unorthodox format of the evidentiary hearing, the Arbitrator declined to grant requests from both parties to enter a judgment as a matter of law at the conclusion of the hearing" and that Jamison's representative "referred to his motion as a Rule 52(c) motion." Doc. #46-4 at PageID 485 n.4. The arbitrator permitted both "parties to submit draft awards elaborating upon the legal issues involved in the arbitration" and Jamison's representative "chose to file a Rule 52(c) Motion for Judgment on Partial Findings in addition [to] his draft award." *Id.*

> …
>
> On Friday, September 29, 2023, [Jamison's representative] for the first time in over two months, communicated with the Case Administrator and objected to the testimony of one of [Harbor Freight's] two witnesses. The Arbitrator overruled this objection. On October 2, [Jamison's representative] emailed the Case Administrator opposing [Harbor Freight's] objection to the admissibility of [Jamison's] deposition and stated that he intended to appear at the October 3 hearing and call witnesses. Although [Jamison's representative] is welcome to appear at the hearing as ... Jamison's representative, he will not be allowed to call any witnesses since he has failed to submit a witness or exhibit list or participate in the pre-hearing conference. He will be permitted to cross-examine [Harbor Freight's] witnesses so long as he adheres to the AAA Standards of Conduct and generally accepted cross-examination norms.

Doc. #66-4 at PageID 852–53. Harbor Freight also attached to its response the Final Award, in which the arbitrator explained:

> This unorthodox and time-consuming arbitration progressed to the eve of the hearing, before [Jamison's representative] informed the Case Administrator that, contrary to his previous representations, he would attend the hearing the next day and intended to call witnesses. … The Arbitrator concluded that [Jamison] had waived her right to call witnesses and submit exhibits because she and her representative had ignored all communications and conferences for several months, reiterated their intention not to appear on more than one occasion and failed to submit timely witness and exhibit lists. In her opinion it would be unfair for [Harbor Freight] to be forced to confront unanticipated witnesses and exhibits particularly since only one day was scheduled for the hearing after [Jamison] declined to participate. Although the Arbitrator refused to allow [Jamison] to call witnesses or introduce evidence, she admitted [Jamison's] April 28, 2023 deposition into evidence over [Harbor Freight's] objection. She also agreed to permit [Jamison's representative] to cross examine [Harbor Freight's] two witnesses which he did in a vigorous manner.

Doc. #66-3 at PageID 840–42.

Harbor Freight's evidence shows the arbitrator was acting within her "inherent authority to police the arbitration process and fashion appropriate remedies to effectuate this authority," *Hamstein Cumberland Music Grp. v. Williams*, 532 F. App'x 538, 543 (5th Cir. 2013), when she limited the evidence Jamison was allowed to present at the final hearing. It was clearly Jamison's

9

own actions—refusing to participate in pre-hearing conferences and consistently missing deadlines set by and not communicating with the arbitrator—which forced the arbitrator to limit the evidence she could present at the final hearing. For this reason, the arbitrator did not violate 9 U.S.C. § 10(a). *See id.* (arbitrator can issue sanctions for failure to abide by arbitration orders).

### c. Retaliation Claim

Jamison alleges that "[t]he arbitrator and [Harbor Freight] removed [her] **retaliation claim** from the hearing/arbitration **just because they could**." Doc. #58 at PageID 605. As support, Jamison first cites, adding her own emphases, the arbitrator's "Order Denying Claimant's Second Motion for Partial Summary Judgment" attached as an exhibit to the Motion to Confirm, in which the arbitrator found "'**[t]he only claims remaining in this arbitration** are whether or not [Harbor Freight] discriminated against [Jamison] in violation of the ADA by failing to reasonably accommodate her physical limitations, **whether or not [Harbor Freight] retaliated against [Jamison]** because she sought an accommodation.'" *Id.* (quoting Doc. #46-2 at PageID 477). Adding her own emphases again, Jamison then quotes the final arbitration hearing transcript (attached to her memorandum in support of her motion) where the arbitrator stated, "**And we're not dealing with issue of retaliation** for filing a complaint for protected activity or for engaging in protective activity. **That is no longer a part of this arbitration**." *Id.* at PageID 605, 675.[8]

In the transcript of the arbitration's final hearing, which Harbor Freight attached as an exhibit to its response, the arbitrator explained that she would be determining if there was a retaliation claim against Jamison for asserting a request for a reasonable accommodation. Doc. #66-2 at PageID 837–38. The arbitrator then made this finding as to the retaliation claim:

> [T]here was no evidence that [Jamison] was retaliated against because she sought

---

[8] Jamison also baldly argues that because the arbitrator and Harbor Freight claim the Final Award is in full settlement of all claims submitted to arbitration, they are committing perjury in violation of § 10(a). Doc. #58 at PageID 605.

> an accommodation. For over two months, [Harbor Freight] sent her several letters explaining why her physical restrictions could not be accommodated, she had telephone calls with key decisionmakers and was given many opportunities to suggest solutions that would allow her to perform the duties of the Logistics Supervisor.

Doc. #63-3 at PageID 803.

Jamison does not dispute in her brief that the only remaining retaliation claim against Harbor Freight following resolution of all her other claims on summary adjudication was related to her accommodation request under the ADA. Doc. #58 at PageID 605. And because the evidence shows the arbitrator made a finding as to such retaliation claim, there is no merit to Jamison's argument that the arbitrator and Harbor Freight removed her retaliation claim.

### d. In-person Hearing

Jamison argues that because her demand for arbitration "also included her demand for an in person arbitration hearing," the arbitrator exceeded her authority by conducting the hearing by video conference. Doc. #58 at PageID 606–07. As support, Jamison, emphasizing certain words, quotes the 2020 Associate Handbook's statement that "[t]he arbitration **shall take place** in the county where you were last employed by Harbor Freight Tools, or in another location mutually agreed by you and Harbor Freight Tools." *Id.* at PageID 606 (quoting Doc. #19-1 at PageID 223). Jamison also cites the "Summ. Judgment Hearing Transcript" (attached to her memorandum in support of her Motion to Vacate), which contains a conversation between the arbitrator and her representative where the representative objects to a video conference final arbitration hearing. Doc. #58 at PageID 606, 701.

Harbor Freight responds that the only reason the hearing was conducted over video conference was because of "logistical difficulties in holding an arbitration in Greenville." Doc. #67 at 12 (quoting Doc. #66-6 at Page ID 863). It also submits that such was necessary because

11

"Scheduling Order #3 (February 27, 2023) memorialized the parties' agreement 'to confer and notify the Arbitrator of the location of the hearing on or before March 27, 2023,' [and] [a]s of June 26, 2023, neither the Arbitrator nor the case administrator [had] been informed that the parties succeeded in finding an appropriate hearing location in Greenville." *Id.* at 13 (quoting Doc. #66-6 at PageID 863 n.2).

Regardless of the logistical difficulties in holding arbitration in Greenville and Jamison's objections to holding a video conference, Jamison does not provide evidence or argue there a material error occurred as a result of the hearing being conducted over video conference. *See generally* Doc. #58. Because "an immaterial error cannot support vacatur" and "an award will be confirmed unless an error was material and caused substantial prejudice to the losing party," the arbitrator's decision will not be vacated simply because the hearing was conducted by video conference. 94 Am. Jur. Trials 211 *Appealing Adverse Arbitration Awards* § 78 (2004); *see Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) ("To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.").

e. *Impartiality*

Jamison argues that she "was deprived of a neutral and impartial arbitrator" because all "the aforementioned illegal actions of the arbitrator proves that she acted as an agent for [Harbor Freight]." Doc. #58 at PageID 607.[9] Harbor Freight responds that such claims are "outlandish," there is no evidence the arbitrator is "an 'associate/agent' of [it]," Jamison tried to have the

---

[9] Jamison also includes the definition of "Associate" in Harbor Freight's 2020 Associate Handbook, appearing to argue that the arbitrator meets the requirements of such definition. Doc. #58 at PageID 607.

arbitrator removed several times during the arbitration, and "[e]ach time the [American Arbitration Association] after 'careful consideration' reaffirmed the [a]rbitrator." Doc. #67 at 15 & n.10 (quoting Doc. #66-8).

Conclusory allegations that an arbitrator was biased are insufficient to vacate an arbitration award. *Moore v. Potter*, 275 F. App'x 405, 411 (5th Cir. 2008). Because Jamison alleges no specific facts and presents no evidence to support her claim that the arbitrator was Harbor Freights' agent/associate, the arbitration award will not be vacated based merely on Jamison's claim of the arbitrator's impartiality.

### 4. Summary

Because Jamison fails to demonstrate any violation of 9 U.S.C. § 10(a) of the Federal Arbitration Act, her Motion to Vacate will be denied.

### III
### Surreply Motion

Regarding the Motion to Confirm, Jamison contends a surreply is necessary because Harbor Freight included a footnote in its reply that "introduce[s] new arguments and evidence in support of its lie that [she] signed an arbitration agreement," seeming to take issue with Harbor Freight's reference to the 2020 Associate Handbook and her signed acknowledgment of such handbook as record evidence. Doc. #65 at 1–2. Harbor Freight responds that (1) "[a]s a threshold matter, [Jamison] does not submit a proposed sur-reply as an exhibit to her [m]otion" so her motion is procedurally deficient;[10] (2) even if the motion was not procedurally deficient, it "did not assert

---

[10] It appears the Fifth Circuit has not yet addressed whether attaching a proposed sur-reply is a procedural requirement, though the Court acknowledges that the United States District Court for the Northern District of Texas found that "[t]he court applies the same requirements to a motion for leave to file [a sur-reply] as a motion for leave to amend." *Lacher v. West*, 147 F.Supp.2d 538, 540 n.1 (N.D. Tex. 2001). Because Local Rule 15 provides that "a proposed amended pleading must be an exhibit to a motion for leave to file the pleading," if the Court were to treat the motion to file a sur-reply like a motion to amend the pleadings, Jamison's motion would be procedurally deficient.

13

a new argument or introduce new evidence in its Reply by referencing the previously filed copy of the 2020 Associate Handbook and Handbook Acknowledgment;" (3) "even assuming [it] did assert a new argument or introduce new evidence in its Reply (it did not), leave to file a sur-reply should nevertheless be denied because [Jamison] already addressed the issue of the 2020 Associate Handbook and Handbook Acknowledgment in her Response;" and (4) "as a practical matter, [it] referred to (and attached as an exhibit) the 2020 Associate Handbook and Handbook Acknowledgment to its Response to Plaintiff's Motion to Vacate Arbitration Award." Doc. #69 at 2–5.

"[S]urreplies are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (citing *Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011)). "But when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Ga. Firefighters' Pension Fund v. Andarko Petrol. Corp.*, 99 F.4th 770, 774 (5th Cir. 2024).

In its June 8, 2022, order compelling arbitration, this Court determined that the DRP in Harbor Freight's 2020 Associate Handbook and the corresponding "Handbook Acknowledgment" signed by Jamison (both then filed on the record) were valid and enforceable and demonstrated an agreement to arbitrate. Doc. #20. Harbor Freight's reliance on and submission of these documents to show such neither presents a new legal theory nor new evidence. And to the extent Harbor Freight makes any new argument regarding the 2020 Associate Handbook and corresponding "Handbook Acknowledgment," the Court will not rely on such when considering the Motion to Confirm. Accordingly, Jamison's motion to file a surreply will be denied.

14

## IV
## Motion to Confirm

In its Motion to Confirm, representing that "all claims raised by [Jamison] before the Court have been fully and finally resolved through the arbitration and there are no more claims to be resolved between the parties, in the arbitration or before the Court," Harbor Freight asks "the Court to lift the stay of this action for the purpose of the Court's confirmation of the Final Award, enter final judgment confirming the full and final resolution of [Jamison's] claims and dismiss [Jamison's] claims with prejudice."  Doc. #46 at 2.  Jamison's response in opposition contains parsed down versions of the same arguments she made in her Motion to Vacate.  Docs. #56, #57, #58.  Harbor Freight replies that Jamison "does not present any valid reason for not confirming the Arbitrator's Final Award."  Doc. #63 at 1.

Under 9 U.S.C. § 9, "any time within one year after the award is made any party to the arbitration may apply to the court … for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C. § 13 requires the party moving for confirmation to also file a copy of the arbitration agreement, the final award, and each notice, affidavit, or other document "used upon an application to confirm, modify, or correct the award."  Because Harbor Freight's application here is timely and Harbor Freight has complied with 9 U.S.C. § 13, and because Jamison's Motion to Vacate will be denied, the stay will be lifted and the arbitration decision will be confirmed.

## V
## Conclusion

Jamison's motion to vacate the arbitration award [57] and her motion to file a sur-reply

15

[64] are **DENIED**.[11]  Harbor Freight's motion to confirm the arbitration award [46] is **GRANTED**. The arbitrator's Final Award is **CONFIRMED**.  A final judgment will issue.

    **SO ORDERED**, this 27th day of June, 2024.

                                          /s/Debra M. Brown
                                          **UNITED STATES DISTRICT JUDGE**

---

[11] Though Jamison's Motion to Vacate is titled, "Motion to Vacate Arbitration Award – Hearing Requested," Doc. #57 at 1, Jamison at no point explains why a hearing is necessary.  Because the record is sufficient to decide the Motion to Vacate, the Court concludes no hearing is warranted.  Besides, a motion to vacate an arbitration award pursuant to 9 U.S.C. § 10 does not require a full hearing.  *See Legion Ins. Co. v. Ins. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987) (affirming denial of hearing on motion to vacate arbitration award, holding full hearing on motion challenging arbitration award is not required because courts "may decide[] motions on written statements of reasons in support and opposition"); *Lowell v. Harris Methodist Health Sys.*, No. 3:99-cv-2809, 2000 WL 351384, at *2 (N.D. Tex. Mar. 10, 2000) (motion to vacate pursuant to 9 U.S.C. § 10 "does not require a full hearing").